# Exhibit A


# GUARANTEE

## THE GUARANTEE COMPANY OF NORTH AMERICA USA
## GENERAL AGREEMENT OF INDEMNITY

This General Agreement of Indemnity (Agreement) is made and entered into this __8th__ day of __August__, 2018 by:

| Name | Social Security or Tax ID Number |
|---|---|
| Thyssen-Laughlin, Inc. | 27-4587927 |
| Laughlin-Thyssen, Inc. | 74-2077398 |
| Marion J. Carter | |
| Jane Ellen M. Carter | |

together with any of their respective partnerships, associations, corporations, successors, assigns, affiliates, any related entities, subsidiaries and/or divisions of the indemnitors whether now existing or hereafter formed or acquired (hereinafter collectively referred to as "Indemnitors"), jointly, severally, collectively and individually, and for the benefit of The Guarantee Company of North America USA, One Towne Square, Ste. 1470, Southfield, Michigan 48076, and its affiliated, associated and subsidiary companies, their successors and assigns (hereinafter referred to as "Surety").

In consideration of the execution of any such Bonds for Principal and as an inducement to such execution by Surety, the Indemnitors, jointly and severally, agree as follows.

**DEFINITIONS:** Where they appear in this Agreement, the following terms shall be considered as defined in this paragraph:

**Principal:** One or more Indemnitors or any existing or future partnerships, joint ventures (whether silent or disclosed), associations, limited liability companies, corporations or other legal or commercial entities in which Indemnitors have or will have a substantial, material, financial and/or beneficial interest, including subsidiaries, associated and affiliated companies who alone or with other Person(s) have secured or may secure the performance and fulfillment of obligations by Bond(s), executed, provided or procured by Surety.

**Bond:** Any and all bonds, undertakings, contracts of suretyship, guaranties or indemnity, issued on behalf of the Principal and signed by the Surety or Additional Sureties, or by the Surety or Additional Sureties and any co-sureties, or procured for the Principal by the Surety or Additional Sureties, whether such bonds, undertakings, contracts of suretyship, guaranties or indemnity are executed before or after the execution of this Agreement.

**Surety:** Any one or combination of the following: The Guarantee Company of North America USA, any person or entity joining with any of the aforesaid companies in executing any Bond, executing any Bond at their request or providing reinsurance to them with respect to any Bond and any subsidiaries, successors, and assigns thereof.

**Contract:** Any agreement between or among Principal and any one or more parties other than the Surety, together with all associated documents, including but not limited to general and special conditions, specifications, drawings, schedules and/or CPMs, whether or not the Surety has executed or procured the execution of any Bond in connection therewith.

**Event of Default:** Principal shall be deemed to be in default under this Agreement in the event of:
1. The failure of any Principal or Indemnitor to pay any premium to the Surety or to any agent of the Surety, including but not limited to additional premiums based on an overrun in contract price, when due or as demanded thereafter by the Surety;
2. The declaration by any Bond Obligee or Project Owner that any Principal is in default under any Contract;
3. Any abandonment, forfeiture, breach, failure, refusal or inability, whether actual or alleged, to perform any Contract, or any obligation contained therein;
4. A determination by the Surety, in its sole and absolute discretion, that the Principal's successful bid on a Bonded Contract was significantly lower than the bid of either or both of the next two (2) highest bidders;
5. Fails to pay, to the extent due in whole or in part, claims, bills or other indebtedness incurred in connection with the performance of any Contract;
6. Becomes the subject of any agreement or proceeding of liquidation or receivership, or actually becomes insolvent;
7. The initiation of any proceeding which materially deprives any Principal of the use of such Principal's plant, facilities, equipment, machinery, tools, supplies or materials;
8. If an individual sole proprietor dies, is adjudged mentally incompetent, is convicted of a felony or disappears and cannot be immediately found by Surety by use of usual methods;

**EXHIBIT A**

9. The submission to the Surety or the Surety's agent by any Principal or Indemnitor of any information used by the Surety in the process of underwriting any Bond which is determined by the Surety, at any time, to be or to have been, materially false, incomplete, or misleading;
10. Receipt of any information by the Surety or the existence of any facts relating to the financial condition of any Principal or Indemnitor which causes the Surety, in its sole and absolute discretion, to believe that such Principal or Indemnitor may be unable to perform or meet any of their obligations under this Agreement;
11. Breaches, fails to perform, or comply with, any provision of this Agreement.

**INDEMNITY TO SURETY:** Indemnitors agree to pay to Surety upon demand:
1. All loss, costs and expenses of whatsoever kind and nature, including court costs, attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Indemnitors to make arrangements for Surety's legal representation), in-house fees, consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of:
    a. Surety having executed, provided or procured any Bond;
    b. any Default under this Agreement by any of the Indemnitors;
    c. Surety enforcing any of the covenants or conditions of this Agreement;
    d. Surety conducting any investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover loss or unpaid premium in connection with any Bonds; and/or
    e. Surety prosecuting or defending any action or claim in connection with any Bonds executed provided or procured on behalf of Principal or Indemnitors, whether Surety at its sole option elects to employ its own counsel, or permits or requires Indemnitors to make arrangements for Surety's legal representation. In addition the Indemnitors agree to pay Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement;
2. Any amount sufficient to discharge any claim made against Surety on any Bond, whether Surety will have made any payment or established any reserve therefor. Such payment shall be equal to the larger of (a) the amount of any reserve set by the Surety, or (b) such amount as the Surety, in its sole judgment, shall deem is sufficient to protect it from loss. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any Bond. Surety shall have no obligation to invest or provide a return on the funds deposited. The Indemnitors acknowledge that their failure to pay, immediately on demand, that sum demanded by Surety will cause irreparable harm for which Surety has no adequate remedy at law. The Indemnitors confirm and acknowledge that Surety is entitled to injunctive relief for specific enforcement of the foregoing provision.
3. Any original, additional or renewal premium due for any Bond.

**CLAIMS AGAINST THE SURETY:** With respect to claims against Surety, Indemnitors agree that:
1. Surety shall have the exclusive right for itself and the Indemnitors to determine in its sole and absolute discretion whether any claim or suit upon any bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed.
2. Surety may incur such expenses, including attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims and completion of any Contract with respect to which Surety has issued any Bond.
3. In the event of any payment of any kind by the Surety, the Indemnitors further agree that the liability of the Indemnitors shall extend to and include, and the Surety shall be entitled to charge and recover for, any and all disbursements made by it in good faith under the belief that:
    a. any Principal or Indemnitor is or has been in default under or pursuant to this Agreement;
    b. the Surety was or might be liable to pay the claims asserted or the sums paid, whether or not such liability actually existed; or
    c. such payments were or are necessary or expedient, in the Surety's sole and absolute discretion, to protect any of the Surety's rights or interests or to avoid or lessen the Surety's liability or alleged liability, whether or not such liability, necessity or expediency actually existed.
4. An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of the Indemnitors to Surety in any claim or suit by Surety against Indemnitors.

**SURETY'S REMEDIES IN EVENT OF DEFAULT:** In the event of an occurrence of an Event of Default, Surety, without notice to the Indemnitors, shall have the right, at its sole discretion, to:
1. Take possession of any part or all of the work under contracts secured by Bonds together with plant, machinery, equipment, job books and records, plans, drawings, tools, supplies or material wherever located and owned, leased or usable by Principal;
2. Assume all right, title and interest of the Principal or Indemnitors in and to all subcontracts and purchase orders, let or to be let, in connection with contracts secured by Bonds;



3. Assume all right, title and interest of Indemnitors in licenses, patents and copyrights which Surety deems necessary for completion of the contracts secured by Bonds;
4. At the expense of Indemnitors, complete or arrange for completion or consent to the Obligee's completion of part or all of the work under contracts secured by Bonds;
5. Assert, pursue or prosecute, in its discretion, and at the expense of Indemnitors in the name of Principal or in the name of Surety, all claims of Principal against Obligees on Bonds or against any person, subcontractor, supplier, government or governmental agency arising or growing out of contracts or work done thereunder secured by Bonds executed, provided or procured by Surety. The authority and power to prosecute said claims shall include the authority to settle said claims or any part thereof on such terms as the Surety believes to be in Surety's best interest;
6. Arrange with the Obligees of the Bonds for the delivery of the consideration for the performance of the contracts, including, but not limited to, all money or property due or to become due including accounts receivable, progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof directly to Surety, endorse checks, drafts, warrants or other instruments issued or paid by such Obligees and to apply the proceeds for the purpose of the trust provided below or for any other purpose which advances the Surety's rights of exoneration, indemnification and subrogation.

Indemnitors waive all notice of such default and the payment of any claim or of the making of any loan to Principal or Indemnitors by Surety. Should Indemnitors learn of any claim or suit against Principal, in which Surety may be held liable, Indemnitors shall give prompt notice to Surety of such claim or suit.

Separate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety.

**SECURITY TO SURETY:** As collateral security to Surety for the agreement of the Indemnitors to repay all loss and expense to Surety, whether heretofore of hereafter incurred, the Indemnitors:
1. Assign to Surety and grant a security interest to Surety in all rights of the Indemnitors in, or in any manner growing out of:
    a. all rights of the Indemnitors in all contracts referred to in the Bonds, or secured by the Bonds and all money or property due or to become due Indemnitors arising out of or in any way relating to contracts performed by Indemnitors, whether secured by Bonds executed by Surety or not, including, but not limited to, accounts receivable, progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof;
    b. all rights of the Indemnitors in all contracts, including, but not limited to, unbonded contracts and/or contracts bonded by another surety, and all money or property due or to become due Indemnitors arising out of or in any way relating to such contracts, including, but not limited to, accounts receivable, progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof;
    c. all the right, title and interest of the Indemnitors in and to all machinery, equipment, vehicles, rolling stock, materials, inventory, leaseholds, fuel, plant, tools, furniture, goods, and personal and fixture property;
    d. all money, cash, cash equivalents, bank accounts, deposit accounts (checking or savings), certificates of deposit, securities, bonds, negotiable instruments, instruments (including promissory notes), letter of credit rights, and all other investment property;
    e. all subcontracts and purchase orders on projects in connection with which the Indemnitors have entered into contracts secured by Bonds executed by Surety and all surety bonds, undertakings or guarantees which secure said subcontracts or purchase orders;
    f. all materials purchased for all contracts referred to in the Bonds, or secured by the Bonds, including material which is in the process of manufacture, in storage at any storage facility, or in transit to any project site;
    g. all licenses, patents, copyrights and trade secrets;
    h. all claims, causes of action, actions or demands and the proceeds thereof which Indemnitors may have against any subcontractor, vendor, materialman, owner, architect, engineer, accountant or others, whether arising out of contracts secured by Bond(s) executed by Surety or not;
    i. all money, claims or causes of actions due, claimed or receivable on insurance policies including life insurance proceeds, builder risk policies, fire policies and casualty policies;
    j. all warehouse receipts, bills of lading, general intangibles and farm products;
    k. all tax refunds or claims for tax refunds;
    l. all limited partnership and general partnership interests.

This ASSIGNMENT shall be effective as of the date of this Agreement but shall be enforceable only in the event of the occurrence of an Event of Default. The Indemnitors hereby authorize the Surety, at its option, to prosecute or enforce said assigned rights in the name of the Surety or in that of the Indemnitors and to endorse and to collect in the name of the



Indemnitors or payee any checks, drafts, warrants or other instruments made or issued in payment of any such assigned rights. Surety's exercise of any of its rights as a secured creditor under this Agreement shall not be a waiver of any of Surety's legal or equitable rights or remedies, including the Surety's rights of subrogation.

2. Irrevocably nominate and appoint any officer of Surety as the true and lawful attorney-in-fact of the Indemnitors, with full rights and authority in event of Principal's default to:
   a. sign the name of the Indemnitors to any voucher, release, satisfaction, check, bill of sale of property referred to herein, or any other paper or contract necessary or desired to carry into effect the purposes of this Agreement;
   b. dispose of performance of any Contract by subletting it in Principal's name or otherwise;
3. Authorize Surety to join any and all of the Indemnitors as parties defendant in any action, regardless of venue, against Surety on account of any Bond, and to enforce the obligations hereunder directly against any of the Indemnitors without the necessity of first proceeding against the Principal.
4. Agree that with respect to each specific contract secured by Bond executed, provided or procured by Surety on Principal's behalf, all money and property representing the consideration for the performance of the contract, (including, without limitation, the proceeds of claims for adjustments, additional compensation, compensation for the delay, extra work, change orders, insurance claims and all damage claims) whether in the possession of the Principal, Indemnitors or others and whether earned, unearned, paid, retained or to be paid shall be held in trust as trust funds for and shall be used solely for:
   a. the performance of the contract;
   b. the payment of obligations to subcontractors, laborers, and suppliers of materials and services incurred or to be incurred in the performance of the contract for which Surety is or may be liable under Bonds and;
   c. the satisfaction of Indemnitors' obligations to Surety under this Agreement and all other indebtedness and liabilities of Indemnitors to Surety.
5. Agree that this Agreement constitutes a security agreement and a financing statement in accordance with the provisions of the Uniform Commercial Code of every jurisdiction in which such Code is in effect. The Surety may make such additions to this Agreement as may be necessary or desirable to permit its filing as a financing statement under the Code, and the Indemnitors shall execute and deliver such further instruments as may be necessary or desirable to permit either the filing of this Agreement as a financing statement or the filing of a financing statement based upon this Agreement in such states, counties and other places as the Surety may deem necessary or desirable. The filing or recording of such document shall be solely at the option of the Surety, and the failure to do so shall not release or impair any of the obligations of the Indemnitors under this Agreement. Any copy of this Agreement certified as such by the Surety shall be considered an original for purposes of filing as a financing statement.

**GENERAL PROVISIONS:**
1. Assent by Surety to changes in any Contract or Bond or refusal to assent shall not release or affect the obligations of Indemnitors to Surety even though any such assent by the Surety does or might increase the liability of the Indemnitors.
2. Surety has the right to decline to execute, provide or procure any bond requested by Principal or Indemnitors. If Surety does execute, provide or procure the execution of a bid bond or proposal bond, or agrees or consents to provide such contract of suretyship, Surety retains the right to decline to execute the final bond (including, but not limited to, performance, payment or maintenance) that may be required in connection with any award that may be made under the bid proposal or tender to which the bid proposal bond or agreement or consent to provide such contract of suretyship is given.
3. Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration and the right of subrogation. The security interest, trust, and other rights granted herein will not be deemed a waiver of Surety's equitable subrogation rights or other rights, said security in rights being in addition to the rights of exoneration, subrogation, and other rights to which Surety is entitled to under law or in equity.
4. Until Surety shall have been furnished with the competent evidence of its discharge, without loss from any Bonds, Surety shall have the right to free access at reasonable times to the books, records and accounts of each of the Indemnitors for the purpose of examining, copying or reproducing them. Each one of the Indemnitors hereby authorizes any depositories in which funds of any of the Indemnitors may be deposited to furnish to Surety the amount of such deposits as of any date requested, and any legal entity doing business with the Indemnitors is authorized to furnish any information requested by Surety concerning any transaction. Surety may furnish in confidence copies of any information, which it now has or may hereafter obtain concerning each of the Indemnitors, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.
5. The Indemnitors will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Indemnitors will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligations.
6. Indemnitors warrant that each of them is specifically and beneficially interested in the obtaining of each bond.



7. The addition to this Agreement of any Indemnitor, including any entities acquired after the date of execution of this Agreement, may be effected by written rider executed by such Indemnitor only, notwithstanding any language herein to the contrary. The Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have heretofore or hereafter, with or without notice to or knowledge of the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from the Indemnitors or others. The rights, powers and remedies given the Surety under this Agreement shall be and are in addition to and not in lieu of, any and all other rights, powers and remedies which the Surety may have or acquire against the Indemnitors or others, whether by the terms of any agreement or by operation of law or otherwise.
8. The Indemnitors waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the Surety under this Agreement, at law or in equity, have been satisfied in full.
9. The Indemnitors hereby waive, to the extent provided by law, all rights to claim any of their property including their homesteads, as exempt from levy, sale, execution or other legal process.
10. The rights and remedies afforded to the Surety by the terms of this Agreement and the terms themselves may not be waived or modified orally. No Rider or Amendment to this Agreement shall be active until signed by an employee of the Surety.
11. This Agreement is to be liberally construed so as to protect, exonerate and indemnify the Surety. The invalidity of any provision of this Agreement by reason of the law of any state or by any other reason shall not affect the validity of any other provision of this Agreement, and the Indemnitors shall remain fully bound and liable hereunder to the Surety to the same extent as if the invalid provision had not existed.
12. All parties agree that any microfilmed, scanned or electronically digitized copy of this document made by Surety as part of its record storage and retention program shall be as effective as the original for all purposes. The Agreement, its riders and addends may be executed in separate counterparts, none of which need contain signatures of all parties, each of which shall be deemed an original, and all of which taken together constitute one and the same instrument.
13. The Indemnitors have relied upon their own due diligence in making their own independent appraisal of Principal and its business and financial condition, will continue to be responsible for making their own independent appraisal of such matters, and have not relied upon and will not hereafter rely upon Surety for information. Surety has no duty to inform any of the Indemnitors of the financial condition or other affairs related to Principal.
14. The Indemnitors shall remain responsible to Surety under this Agreement regardless of any changes in the relationship of the Indemnitors with Principal.
15. Wherever used in this instrument, the plural shall include the singular, the singular shall include the plural, and the neuter shall include both genders as the circumstances require.
16. Indemnitors agree to give written notice to the Surety of any anticipated change of more than ten percent in ownership or control of the Indemnitors.
17. The Indemnitors agree to submit themselves to personal jurisdiction in the State of Michigan, in whatever jurisdiction in which the Surety sustains or pays any loss for which the Indemnitors are liable hereunder and in whatever jurisdiction Surety may be sued as a consequence of its having issued any Bond. With respect to any action brought by the Surety on this Agreement in a jurisdiction in which one or more of the Indemnitors reside, are domiciled, are doing business or are found, each of the Indemnitors who are not in the jurisdiction hereby designates each of the Indemnitors in such jurisdiction as his agent to receive on his behalf service of process in such action.

**WAIVER OF TRIAL BY JURY:** The Indemnitors hereby waive trial by jury in any action or proceeding to which any or all of the Indemnitors and the Surety may be parties, arising out of or in any way pertaining to this Agreement. It is agreed and understood that this waiver constitutes a waiver of trial by jury of all claims against all parties to such actions or proceedings, including claims against parties who are not parties to this Agreement.

**TERMINATION:** This Agreement is a continuing obligation of the Indemnitors unless terminated as provided in this paragraph. An Indemnitor desiring to terminate liability as to future Bonds of Principal must:
1. Give written notice to Surety at The Guarantee Company of North America USA, One Towne Square, Ste. 1470, Southfield, Michigan 48076, by certified or registered mail, of such termination;
2. State in such notice the effective date (not less than thirty days after the receipt of notice by Surety) of termination of such Indemnitor's liability for future Bonds.
3. It is understood and agreed that oral notice to or constructive notice to any agent or employee of Surety shall not constitute effective notice of termination under this agreement.

After the effective date of termination, the Indemnitor giving notice shall be liable hereunder for:
1. Bonds executed or authorized prior to such date, and renewals and extension thereof;
2. Bonds executed pursuant to a bid or proposal bond executed or authorized prior to such date, and renewals and extensions thereof.

Such termination of liability as to an Indemnitor shall in no way affect the obligation of any other Indemnitor who has not given notice as herein provided.


REPRESENTATIONS: EACH OF THE INDEMNITORS REPRESENTS TO THE SURETY THAT HE HAS CAREFULLY READ THE ENTIRE AGREEMENT AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN, OR, TO THE EXTENT SUCH OTHER AGREEMENTS OR UNDERSTANDINGS EXIST, THEY ARE HEREBY SUPERSEDED BY THIS AGREEMENT.

### ENTITY INDEMNITOR ACKNOWLEDGEMENT

Entity Name: Thyssen-Laughlin, Inc.
BY: /s/ Marion J. Carter
Name: Marion J. Carter    Title: President
Entity Tax ID #: 27-4587927

STATE OF Texas, COUNTY OF Chambers:
On November 14, 2018, before me, T Marcontell, Notary
(insert name and title of notary/officer)
personally appeared Marion J. Carter, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of Texas that the foregoing paragraph is true and correct.
WITNESS my hand and official seal
Signature: /s/ T Marcontell (SEAL)

T MARCONTELL
Notary Public, State of Texas
Comm. Expires 06-05-2022
Notary ID 10392862

### ENTITY INDEMNITOR ACKNOWLEDGEMENT

Entity Name: Laughlin-Thyssen, Inc.
BY: /s/ Marion J. Carter
Name: Marion J. Carter    Title: President
Entity Tax ID #: 74-2077398

STATE OF Texas, COUNTY OF Chambers:
On November 14, 2018, before me, T Marcontell, Notary
(insert name and title of notary/officer)
personally appeared Marion J. Carter, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of Texas that the foregoing paragraph is true and correct.
WITNESS my hand and official seal
Signature: /s/ T Marcontell (SEAL)

T MARCONTELL
Notary Public, State of Texas
Comm. Expires 06-05-2022
Notary ID 10392862

GUARANTEE

## INDIVIDUAL INDEMNITOR ACKNOWLEDGEMENT

BY: _Marion Carter_
Name: Marion J. Carter
Address: 11905 Lake Stone Dr., Austin TX 78738
Social Security #: ███████

STATE OF _Texas_ COUNTY OF _Chambers_
On _November 14, 2018_, before me, _T Marcontell, Notary_
(insert name and title of notary/officer),
personally appeared _Marion J. Carter_, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Texas_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _TMarcontell_ (SEAL)

T MARCONTELL
Notary Public, State of Texas
Comm. Expires 06-05-2022
Notary ID 10392862

## INDIVIDUAL INDEMNITOR ACKNOWLEDGEMENT

BY: _Jane Ellen M. Carter_
Name: Jane Ellen M. Carter
Address: 11905 Lake Stone Dr., Austin TX 78738
Social Security #: ███████

STATE OF _Texas_ COUNTY OF _Chambers_
On _November 14, 2018_, before me, _T Marcontell, Notary_
(insert name and title of notary/officer),
personally appeared _Jane Ellen M. Carter_, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Texas_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _TMarcontell_ (SEAL)

T MARCONTELL
Notary Public, State of Texas
Comm. Expires 06-05-2022
Notary ID 10392862